## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANET CLARK for | * | |
| KAREN ANN MARTI (Deceased) | * | |
| | * | |
| v. | * | Civil Case No. RDB-14-162 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*

### REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions, and Plaintiff's reply. ECF Nos. 15, 18, 21. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that both motions be denied, and the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Plaintiff's now-deceased sister, Karen Marti, applied for Disability Insurance Benefits on March 7, 2011, alleging disability beginning January 2, 2004. (Tr. 195-201). Ms. Marti's date last insured was December 31, 2008, which means that the relevant period for considering whether or not she was disabled was the four years between January 2, 2004, and December 31, 2008. (Tr. 21). Ms. Marti's claim was denied initially and on reconsideration. (Tr. 120-23, 129-30). An Administrative Law Judge ("ALJ") held a hearing on May 15, 2013, (Tr. 37-94), and subsequently denied benefits to Ms. Marti in a written opinion. (Tr. 19-31). The Appeals Council ("AC") declined review, (Tr. 1-5), making the ALJ's decision the final, reviewable

decision of the agency.

The ALJ found that Ms. Marti suffered from the severe impairment of bipolar disorder. (Tr. 21).   Despite this impairment, the ALJ determined that Ms. Marti retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations:  the claimant is limited to unskilled work.

(Tr. 25).  After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Marti was capable of performing jobs that exist in significant numbers in the national economy, and that she was not therefore disabled.  (Tr. 30-31).

Plaintiff raises six separate arguments on appeal.  First, she argues that the AC did not appropriately consider new and material evidence of Ms. Marti's suicide, which occurred shortly after the ALJ's decision issued.  Second, she argues that the ALJ improperly substituted his own medical opinion for that of Ms. Marti's treating psychiatrist, Dr. Templeton.  Third, Plaintiff contends that the ALJ failed to consult a medical expert to establish the onset date of Ms. Marti's disability.  Fourth, Plaintiff posits that the ALJ should have deemed Ms. Marti's cervical spine disease and disc herniations to be severe at Step Two.  Fifth, Plaintiff contends that the ALJ failed to evaluate relevant evidence, and sixth, Plaintiff argues that the ALJ erred in making an adverse credibility assessment.  While many of Plaintiff's arguments lack merit, I am persuaded that the ALJ's conclusion is not supported by adequate medical evidence of record.  Therefore, I recommend remand for additional analysis.  In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Marti was not disabled during the relevant period was correct or incorrect.

Starting with Plaintiff's unpersuasive arguments, Plaintiff contends that the AC should have ordered remand in light of its receipt of the death certificate evidencing Ms. Marti's suicide

on July 18, 2013.  Pl. Mem. 2-4.  The AC must review additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991).  Evidence is "new" if "it is not duplicative or cumulative."  *Id.* at 96.  "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."  *Id.*  "[T]he regulatory scheme does not require the [Appeals Council] to do anything more than what it did in this case, i.e., consider new and material evidence ... in deciding whether to grant review."  *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (internal quotation marks omitted).  The AC is not required to take any specific action in response to new and material evidence, and is not required to provide a detailed explanation of its evaluation.  *Id.*

In this case, the record demonstrates the AC's receipt and consideration of the additional evidence, including Ms. Marti's death certificate.  (Tr. 1, 4).  The information contained in the death certificate is clearly "new," because it post-dated the ALJ's opinion.  However, based upon the ALJ's analysis in his opinion, there is no reasonable possibility that the new evidence would have changed the ALJ's conclusion.  The ALJ rejected the opinion of treating psychiatrist, Dr. Templeton, who began seeing Ms. Marti in February 2010, largely on the grounds that Dr. Templeton did not start treatment until over thirteen months after Ms. Marti's date last insured. (Tr. 29).  In so concluding, the ALJ drew a clear distinction between Ms. Marti's condition prior to her date last insured and her condition at the time of her treatment by Dr. Templeton.  (Tr. 29-30).  Accordingly, there is no reasonable possibility that the ALJ would have found records reflecting Ms. Marti's July 2013 suicide, which occurred more than four and one-half years after her date last insured, to be relevant to establishing her pre-December 2008 mental state.

Plaintiff's Step Two argument also lacks merit.  Plaintiff alleges that the ALJ should have

found Ms. Marti's cervical spine disease and disc herniations to be severe impairments.  Pl. Mot.
33-34.   An impairment is considered "severe" if it significantly limits the claimant's ability to
work.   *See* 20 C.F.R. § 404.1521(a).   The claimant bears the burden of proving that her
impairment is severe.  *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Hunter v.
Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).   The ALJ considered and discussed Ms. Marti's
complaints of neck pain at Step Two.  (Tr. 22).   The ALJ noted that the documentary medical
evidence reflected no ongoing complaints of neck pain and no treatment for neck pain between
the alleged onset date and the date last insured.  *Id.*  Because there was no evidence that neck
pain severely limited Ms. Marti's functioning during the relevant time frame, the ALJ fairly
concluded that the impairment had no more than a *de minimis* effect on her ability to work.  *Id.*
Moreover, even if the ALJ had erred in his evaluation of Ms. Marti's neck pain at Step Two,
such error would be harmless. Because Ms. Marti made the threshold showing that her bipolar
disorder constituted a severe impairment, the ALJ continued with the sequential evaluation
process and properly considered all of the impairments, both severe and non-severe, that
significantly impacted Ms. Marti's ability to work. See 20 C.F.R. § 404.1523; (Tr. 786-89).  Any
Step Two error, then, does not necessitate remand.

Moreover, I do not find that the evidence establishes that Ms. Marti's physical
impairments were disabling.  She was diagnosed with cervical spondylosis and disc herniation,
in addition to cervical radiculopathy, in 2002.  (Tr. 522-23, 652-53).  Her degenerative changes
were noted to be "mild."  (Tr. 550).  The medical evidence does not reflect any related functional
limitations, or any treatment for the neck issues during the 2004-2008 time frame.  Accordingly,
the ALJ did not err in his assessment of Ms. Marti's neck pain.

However, the flaw in the ALJ's analysis lies in the lack of an adequate evidentiary basis

for his conclusion that Ms. Marti's records during the relevant time frame "do not reveal a disabling mental health impairment." (Tr. 29). The ALJ summarized most, but not all, of the records pertaining to Ms. Marti's mental health between 2004 and 2008. The ALJ noted that two friends of Ms. Marti, who had spent time with her during the relevant period, testified that she had experienced depression and manic phases, and had difficulty staying focused and taking care of personal issues. (Tr. 26). The ALJ noted that 2004 records from Ms. Marti's then-treating psychiatrist, Dr. Taube, reflected that she needed to restart her mental health medication. (Tr. 812). Almost one year later, in 2005, Dr. Taube noted that Ms. Marti was depressed and that her bipolar disorder remained unmedicated. (Tr. 814). Ms. Marti's primary care physician, Dr. Jett, confirmed the diagnosis of depression in 2005. (Tr. 469). In October of 2005, Dr. Taube noted that Ms. Marti's symptoms had gotten worse, and that she was suffering from insomnia. (Tr. 814-15). Dr. Taube explained her medications to her and scheduled another appointment in a month, noting that Ms. Marti "can't afford to come sooner." *Id.* By November 2005, Ms. Marti's condition had stabilized. (Tr. 815). In January of 2006, while Ms. Marti was still complaining of depression, Dr. Taube suggested that she might look for part-time tutoring or retail work. (Tr. 816). Ms. Marti did not return for further evaluation or treatment from Dr. Taube. In June of 2007, Ms. Marti telephoned Dr. Jett to ask for medication to calm her nerves, since she was experiencing severe stress and could not sleep. (Tr. 570).

The records clearly reflect Ms. Marti's condition from 2010, when she began regular psychiatric treatment with Dr. Templeton, to 2013, when her condition worsened to the point where she took her own life. Dr. Templeton opined, on May 10, 2013, after treating Ms. Marti for approximately three years, that she had suffered her symptoms "over the last ten years." (Tr. 843). Dr. Templeton diagnosed bipolar disorder, generalized anxiety disorder, and personality

disorder.  *Id.*  He noted that it is his "clinical opinion that she has suffered chronic and debilitating episodes of psychiatric illness with only brief periods of some limited improvement . . . . She exhibited the same chronic dysfunction and psychiatric problems during her clinical contact with Steven Taube, M.D., from early 1995 until 2006, whose records I reviewed."  (Tr. 844).  Significantly, Dr. Templeton opined that, "Medication trials have been ineffective, limited and inconsistently attempted because of her chronic symptoms, behavior, and limited clinical contacts."  *Id.*

As noted above, the ALJ did not ascribe controlling weight to Dr. Templeton's opinion that Ms. Marti suffered from disabling impairments during the relevant time frame. Significantly, however, there were no contrary medical opinions supporting the notion that Ms. Marti was *not* disabled during the relevant time frame.  The ALJ cited no other treating sources, state agency reviewing physicians, consultative examiners, or medical experts to counter Dr. Templeton's opinion.  Instead, the ALJ relied upon his own review of the medical records from Dr. Taube and Dr. Jett.  The ALJ correctly noted that those records demonstrated limited mental health treatment during the relevant time frame.  However, based on Dr. Templeton's opinion, it is unclear whether Ms. Marti's limited treatment and sparse objective findings resulted from (1) a relatively stable mental condition or (2) a mental health impairment which caused her to refrain from obtaining much-needed treatment.

Some of the evidence the ALJ did cite is relatively unpersuasive, at least without further explanation.  For example, the ALJ stated "the claimant's activities of daily living during this period were inconsistent with an individual who was experiencing disabling symptoms and, as discussed above, the claimant reported in November 2005 that she applied for a job for which she was qualified."  (Tr. 29).  The ALJ did not explain which specific activities of daily living

support a determination that Ms. Marti was not disabled.  The ALJ cited the fact that Ms. Marti purchased a house, removed appliances from the house, and started a business.  (Tr. 23, 27). However, the record reflects that the business failed, in part due to Ms. Marti's depression.  (Tr. 88, 813).  The ALJ also referred to Ms. Marti's trip to Rhode Island one Thanksgiving and her single unsuccessful job application.  (Tr. 23, 27).  However, the ALJ did not cite any activities of daily living that would be inconsistent with the condition described by Dr. Templeton, which is "chronic and debilitating episodes of psychiatric illness with only brief periods of some limited improvement."  (Tr. 23-27, 844).  While the ALJ relies in part on the absence of medical records describing Ms. Marti's problems with activities of daily living, as noted above, the absence of records cannot be deemed determinative under the particular facts presented in this case.

The ALJ also draws an unwarranted conclusion about what Dr. Taube's medical opinion may have been.  The ALJ notes, "In addition, the psychiatrist told the claimant to clean her house one hour daily and get a part-time tutoring or retail job . . .  These activities indicate the psychiatrist believed the claimant could perform substantial gainful activity."  (Tr. 29).  In fact, however, substantial gainful activity, in most instances, refers to full-time work, or at least significant and regular part-time work which would permit the employee to exceed an earnings threshold.  *See* 26 C.F.R. 7.105-2.  Thus, a suggestion that Ms. Marti should do some daily housecleaning and explore part-time tutoring or retail work does not amount to an opinion that she was capable of substantial gainful activity.

Ultimately, in light of the opinion expressed by treating physician, Dr. Templeton, without a contrary medical opinion from a reviewing physician or medical expert considering Ms. Marti's file, the ALJ lacked substantial evidence to support his conclusion that Ms. Marti was capable of unskilled work during the relevant period.  Accordingly, remand is warranted to

permit the ALJ to further develop the  medical record.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1.  the Court DENY Defendant's Motion for Summary Judgment (ECF No. 18);

2.  the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 15); and

3.  the Court order the Clerk to REMAND the case to the Commissioner for further

proceedings and to CLOSE this case.

 Any objections to this Report and Recommendations must be served and filed within

fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated:  October 15, 2014                                 _____/s/_____

                                                         Stephanie A. Gallagher
                                                         United States Magistrate Judge